## STATE of Utah in re Mark Francis SCHREUDER.

### No. 17811.

Supreme Court of Utah.

June 4, 1982.

R. Paul Van Dam, Joseph E. Tesch, Salt Lake City, for appellant.

David L. Wilkinson, Atty. Gen., Franklyn B. Matheson, Asst. Atty. Gen., Ted L. Cannon, Salt Lake County Atty., Olof Johansson, Asst. Salt Lake County Atty., Salt Lake City, for respondent.

OAKS, Justice:

After a hearing, the juvenile court certified a 20-year-old defendant to be tried in the district court for criminal homicide. This appeal attacks the certification order on the grounds that the juvenile court (1) lacked jurisdiction over defendant, (2) erred in holding its hearings in the absence of the defendant (although his retained counsel was present and participated), and (3) had insufficient evidence to support its order. We affirm.

At the direction of the Court, the parties briefed the question of the possible mootness of the appeal because of an intervening statute authorizing prosecution without juvenile court certification. For reasons explained in the footnote,[1] we have elected to forego a ruling on the constitutionality of that statute as applied in the present case and to rule on the merits of the certification.

On December 5, 1980, just a few weeks short of his 20th birthday, a verified petition was filed in the juvenile court alleging that, as part of a robbery or otherwise for personal gain, defendant had intentionally killed his grandfather, Franklin Bradshaw, in Salt Lake County on or about July 23, 1978. Defendant was about 17½ years of age at that time. At all times pertinent to this controversy, defendant resided at his home in New York or at a college he was attending in Connecticut. He has never been a permanent resident of Utah.

I.

Our statutes are less than clear on how the juvenile court obtains jurisdiction over a juvenile residing in another state who is accused of committing a crime in Utah. The Interstate Compact on Juveniles only provides for the transfer of juveniles who are runaways or who have been "adjudged delinquent." U.C.A., 1953, § 55–12–1. The

1. After the commission of the crime but before the juvenile was certified for trial in the district court, the Legislature enacted subsection (7) to U.C.A., 1953, § 78–3a–25 (Supp.1981). That statute provides that "when a petition in the case of a person 16 years of age or older alleges any class of criminal homicide" or other serious offense, the county attorney may divest the juvenile court of jurisdiction by filing a criminal information directly in the district court. On June 15, 1981, the same day the juvenile court signed its certification order, the county attorney filed an information against defendant and obtained a warrant of arrest. After this Court refused to stay the district court proceedings pending this appeal from the certification order, defendant was extradited to Utah pursuant to these charges and, we are informed, will soon go to trial. If the district court validly acquired jurisdiction pursuant to the information filed under § 78–3a–25(7), this appeal

from the juvenile court's certification order might be moot under our rulings in *Merhish v. Folsom,* Utah, 646 P.2d 731 (1982), and *Duran v. Morris,* Utah, 635 P.2d 43 (1981). But defendant contends that, as applied to his case, that statute drastically alters the potential consequences of a previously committed act to his great potential detriment, and is therefore an invalid ex post facto law. Utah Const. art. I, § 18; U.S.Const. art. I, § 10; *J. M. R. v. Moore,* Okl.Cr., 610 P.2d 811 (1980). Although not ruling on that issue, we are persuaded that defendant has raised sufficient doubt about the constitutionality of that statute as applied to his case that it is preferable to proceed to the merits of the appeal if that will permit us to avoid a ruling on the constitutionality of the statute. *Hoyle v. Monson,* Utah, 606 P.2d 240 (1980); *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).

Extradition Act only applies to "a person charged with a crime," U.C.A., 1953, § 77–30–22, which does not include juveniles named in petitions in the juvenile court. In fact, defendant contends that at the time this petition was filed in the juvenile court the State of Utah had no way of compelling him to attend its certification proceeding or to return to Utah to answer the serious charges pending here. The procedures followed in this case must be viewed against this uncertainty.

■ The purpose of a certification hearing is to determine if the best interests of the child or of the public would be served by the juvenile court's retaining jurisdiction. U.C.A., 1953, § 78–3a–25, quoted hereafter. The certification hearing "is not a criminal proceeding, but is civil in nature." *State in re Atcheson*, Utah, 575 P.2d 181, 183 (1978). Our statutes specify that, except as otherwise provided in the Act, "service of summons and process and proof of service shall be in the manner provided in the Utah Rules of Civil Procedure." § 78–3a–27(1). Those Rules, of course, provide for a court to obtain jurisdiction by service of process outside as well as inside the territorial limits of the state. Utah R.Civ.P. 4(f)(3). Thus, the normal means for the juvenile court to gain jurisdiction over a juvenile is apparently by service of summons. § 78–3a–26(1). Where this would be ineffectual, the juvenile court can issue a warrant for the arrest of the juvenile. § 78–3a–28.

In this case, upon the presentation of an affidavit with a probable cause statement, the juvenile court issued an "order for detention" for the defendant on December 5, 1980. The record shows that defendant was arrested in Connecticut pursuant to that order. The record also shows that on January 7, 1981, in Connecticut, defendant was personally served with a copy of the Petition and the Motion for Certification, which included notice of the certification hearing set in the juvenile court for January 18, 1981. In response to defendant's later challenge, the juvenile court held that this arrest and service of papers, which contained "all the information necessary to constitute a summons," satisfied both statutory provisions for initiating the jurisdiction of the juvenile court.

■ Defendant now contends that the juvenile court never properly obtained jurisdiction over him, either by the order for detention and arrest or by the summons. He contends that the Connecticut arrest was illegal because it was made on the basis of a telex from Salt Lake City and before the order for detention and supporting affidavit were received in Connecticut. He also assails the sufficiency of the affidavit, which he argues was not subscribed and sworn to until 19 days after issuance. Each of these claimed errors is based on facts not shown in the record and/or is a matter not raised in the juvenile court in any of its various hearings on the question of certification. Consequently, none of these contentions is properly before us on this appeal. *State v. Lee*, Utah, 633 P.2d 48 (1981); *Goodman v. Wilkinson*, Utah, 629 P.2d 447 (1981); *Holman v. Sorenson*, Utah, 556 P.2d 499 (1976).

■ Defendant further attacks the detention order as illegal under § 78–3a–30(3) for authorizing defendant's incarceration in an adult facility without a prior hearing. But that provision relates only to "child[ren] 16 years of age or older," and a "child" is elsewhere defined as "a person less than eighteen years of age." § 78–3a–2(3). Since defendant was almost 20 years old when the order for detention was issued, he was not entitled to the protections § 78–3a–30(3) specifies for children.

■ We conclude that the juvenile court acquired jurisdiction over defendant, for purposes of the certification hearing, by virtue of his arrest in Connecticut and the notice provided by the Petition and Motion for Certification delivered to him there. We therefore find it unnecessary to rule on the jurisdictional sufficiency of those papers as a summons, or on the possibility that the district court's jurisdiction could be sustained on the facts of this case under the rule applied or reaffirmed in *Ker v. Illinois*,

119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

## II.

■ Defendant's principal argument on appeal is that the juvenile court violated defendant's procedural due process rights to a fair hearing by holding its certification hearing in his absence. We test this contention against the settled principle that while the informal and flexible procedures of the juvenile court "must conform to the fundamental requirements of due process and fair treatment," they "need not 'conform with all of the requirements of a criminal trial....'" *State in re L. G. W.*, Utah, 641 P.2d 127, 129–30 (1982), and authorities cited.

Although the hearing for certification was originally noticed for January 28, 1981, no hearing was held on that date. Instead, apparently by agreement, the juvenile court held a succession of hearings on January 21, February 24, March 3, and June 10. Although defendant refused to appear at any of these hearings, he was represented at each of them by counsel of his choice. His counsel moved to quash the order for detention; moved to dismiss or, in the alternative, to stay the certification proceedings; requested a probable cause hearing; cross-examined state's witnesses; and otherwise vigorously represented the defendant's interests at each point in the proceeding. Despite having abundant opportunity to do so, counsel presented no evidence for the defendant, but did argue strenuously that, based on the evidence adduced by the state, the defendant should not be certified for trial in the district court.

The leading case on a juvenile's due process right to be heard in a certification proceeding is *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). In

that case, where the District of Columbia statute made no provision for a hearing on the question of certification and where the child was neither present nor represented by counsel at any hearing on that question, the Court held that "the 'critically important' question whether a child will be deprived of the special protections of the Juvenile Court Act" could not be determined "in isolation and *without the participation or any representation* of the child...." *Id.* at 553, 86 S.Ct. at 1053. (Emphasis added.) The state distinguishes the *Kent* holding by the fact that the disjunctive *or* in this passage suggests that "representation" of the juvenile satisfies due process even without the child's "participation" or presence. We agree.

■ In a case like this, where the juvenile's counsel had full opportunity to represent the juvenile's interests by motions, cross-examination, presentation of evidence, and argument, we see no due process defect in the voluntary absence of the juvenile. The closest precedent of which we are aware is *N. P. A. v. State*, Alaska, 604 P.2d 599, 601 (1979), where the court held that there was no constitutional error in holding a certification hearing in the absence of a represented defendant who was absent because she had refused to waive extradition from another state, thus "voluntarily failing to avail herself of the opportunity to appear." We approve and follow the reasoning of that opinion, which relied on the fact that since "such proceedings are not criminal in nature and are dispositional, rather than adjudicatory[,] a waiver hearing 'does not result in any determination of guilt or innocence or in any confinement or punishment.'" *Id.* In that circumstance, the presence of counsel who represents a juvenile and can provide argument and evidence on his or her behalf, and the opportunity for defendant to appear in person if desired, is sufficient to meet the requirements of due process.[2]

---

**2.** Defendant relies on *State v. Tuddles*, 38 N.J. 565, 186 A.2d 284 (1962). There, the Juvenile and Domestic Relations Court of Essex County referred 16-year-old Tuddles to the county

prosecutor for prosecution as an adult on a charge of murder. Tuddles' father was present at the referral hearing, but Tuddles, who had not yet been apprehended, was not. The Su-

## III.

■ Defendant also contends that the juvenile court's certification order is not supported by substantial evidence. As we explained in *State in re L. G. W.*, 641 P.2d at 130, this Court has its "broadest scope of appellate review" in an appeal from the juvenile court, including power to review the facts as well as the law. We have elected to exercise that broad power in this case, and to make our own review of the record facts before the Court.

We summarized the purpose of the certification hearing in *State in re Atcheson*, 575 P.2d at 183:

A certification hearing is not a criminal proceeding, but is civil in nature. Its purpose is not to ascertain whether the child committed the alleged offense or even if there was probable cause to so believe, but rather to determine if the best interests of the child or of the public would be served by retaining jurisdiction. It is incumbent upon the judge to anticipate the real possibility of an ultimate adjudication of guilt and thus to view the relative merit of the juvenile and adult systems in that light.

Defendant's certification hearing actually consisted of a series of four hearings, three of which were devoted entirely to arguing defendant's various motions. The fourth was held six months before defendant's 21st birthday, and therefore six months before the juvenile court's jurisdiction would have expired—even if it had been retained. § 78–3a–16(1).

The two findings defendant challenges are as follows:

3. If true, the alleged offense [first degree murder] would have been committed in a violent, intentional, premeditated, and aggressive manner with a wanton disregard for the life and property of another.

\*   \*   \*   \*.   \*   \*

5. There is no existing treatment program or juvenile institution within the State of Utah capable of dealing with a juvenile who is twenty and a half years of age, who has allegedly committed a homicide.

On the basis of those findings, the juvenile court entered the following conclusion of law:

It would be contrary to the best interest of the public for the Juvenile Court to retain jurisdiction in this matter, and Mark Francis Schreuder should be certified to the Third District Court for criminal proceedings because the prospects for adequate protection of the public and the likelihood for reasonable rehabilitation (if he is found to have committed the alleged offense) are not found through the procedures, services and facilities available to the Juvenile Court, and the resources for treatment and public safety lie with the Adult Criminal Court.

■ Based on our own independent review of the record, we conclude that the juvenile court's conclusion is supported by its findings, and that its findings are supported by substantial evidence presented at the hearing. For example, the combined testimony of the youth corrections and juvenile court officers showed that defendant, if shown to have committed first degree murder, could not have been rehabilitated in a juvenile program before his 21st birthday, even on the dubious assumption that the trial itself could have been completed within the six-month period. While the court-ordered report on the background and social history of the defendant may be incomplete and inconclusive—as defendant contends—defendant cannot rely on those

preme Court of New Jersey held that "the interest of society as *parens patriae*" and "fairness to the parties involved in the light of the legislative objective" required that Tuddles be present at the juvenile court hearing. 38 N.J. at 574, 186 A.2d at 288–89. *Tuddles* differs from the instant case in three important respects: (1) Tuddles was not "present" by legal counsel; (2) Tuddles received no notice of the referral hearing; and (3) the *Tuddles* holding was based on state statutes and the *parens patriae* doctrine, not on constitutional due process. For these and other reasons, *Tuddles* is not a persuasive precedent in the instant case.

deficiencies when they were at least partly attributable to defense counsel's request that no contacts be made with defendant or his family.

■ Furthermore, defendant's contention that the evidence was insufficient seems to assume that the juvenile court could certify him for trial as an adult only if doing so was in the best interest *of the defendant*, and that the evidence must be measured against that standard. In fact, as is evident from the conclusion quoted above, the court concluded only that it would be "contrary to the best interest of the public" for the juvenile court to retain jurisdiction. That finding satisfies the statute, which empowers the juvenile court to direct that a juvenile be held for criminal proceedings in the district court "if the court after full investigation and a hearing finds that it would be contrary to the best interests of the child *or of the public* to retain jurisdiction...." U.C.A., 1953, § 78–3a–25. (Emphasis added.) Pursuant to that standard, we adopt and reaffirm the juvenile court's findings and conclusion quoted above. On the facts of this case, and in view of the public interest in the enforcement of the criminal laws and the punishment and rehabilitation of offenders, we cannot see how the court could reasonably have reached any other conclusion than that it would be contrary to the public interest for the juvenile court to retain jurisdiction in this case.

■ We also find no merit in defendant's contention that the juvenile court impermissibly limited discovery concerning the circumstances of the murder. The court was justified in limiting defense counsel's repeated attempts to broaden the scope of the proceeding by arguing the question of probable cause, which is clearly outside the scope of a certification hearing. *State in re Atcheson, supra; In re Murphy*, 15 Md.App. 434, 291 A.2d 867, 868 (1972); *State ex rel. Juvenile Department of Marion County v. Johnson*, 11 Or.App. 313, 501 P.2d 1011, 1013 (1972).

■ Finally, defendant's challenge must fail for one additional reason. Defendant argues on the basis of *Bromley v. Crisp*, 561 F.2d 1351 (10th Cir. 1977), that the constitutional errors he cites entitle him to a *nunc pro tunc* "reconstructed" certification hearing in the district court, and contends that if the district court finds that the juvenile court erred in certifying him for trial as an adult, defendant must now be released forthwith.

As our foregoing discussion indicates, we do not agree that the juvenile court committed error. But even if its proceedings were constitutionally flawed, a *nunc pro tunc* hearing would be inappropriate in this case. Such a hearing is required only if the juvenile court, in a flawless hearing, might have retained jurisdiction. In *Brown v. Cox*, 481 F.2d 622 (4th Cir. 1973), *cert. denied*, 414 U.S. 1136, 94 S.Ct. 881, 38 L.Ed.2d 761 (1974), the Fourth Circuit Court of Appeals, sitting *en banc*, found that a juvenile court transfer and certification hearing "was invalid for failure to accord the petitioner procedural due process...." Nevertheless, the Court held:

> After a careful review of the facts of this case, we are of the firm opinion that this is not a case requiring a *nunc pro tunc* waiver hearing.... We have no difficulty in finding ·to a moral and legal certainty that no Juvenile Court, on the record in this case, would have denied transfer.
>
> \* \* \* \* \* \*
>
> It would be a useless imposition on the Trial Court and an inadmissible waste of valuable judicial time to remand a case as plain as this for a reconstructed *nunc pro tunc* hearing on the propriety of a transfer.

*Id.* at 627–28. This characterization applies without qualification to the instant case. Given the overwhelming weight of the evidence in favor of certification, we find "to a moral and legal certainty" that no juvenile court could properly have retained jurisdiction. To do so on the facts of this case, as in *Brown v. Cox*, would have been an "abuse of discretion." *Id.* at 628.

In summary, the juvenile court had jurisdiction over the defendant, its jurisdiction was properly exercised despite defendant's voluntary absence from its hearings, and in view of defendant's age and the severity of the crime with which he was charged, the juvenile court could not have done other than certify him for trial as an adult. Its order is therefore affirmed.

HALL, C. J., and HOWE and DURHAM, JJ., concur.

STEWART, J., concurs in the result.